## THOMPSON & CHEW v. GWYN & WALLIS.

1. WHARFINGER — LIABILITY FOR INJURY RESULTING FROM MISTAKE IN FORWARDING GOODS RECEIVED BY HIM TO BE HELD FOR FUTURE ORDER. —A wharfinger who is a receiving and forwarding merchant, and who received cotton to be shipped as thereafter directed, but by mistake forwarded the cotton to New Orleans for account of other parties than the owner (and it was sold by the consignees at fifteen and a half cents per pound, and the proceeds paid over to those for whose account it was consigned, and by them paid over to the owners, but not accepted in full discharge of their claim against the wharfinger) is liable to the owners for the injury sustained in placing the cotton beyond their power to control it by instructions to hold it for a higher price.

2. SAME — SAME — EVIDENCE ADMISSIBLE TO SHOW ADVANCE OF PRICE OF ARTICLES IMPROPERLY FORWARDED. — In such case evidence that plaintiffs had instructed their merchants to hold their cotton for higher prices, and that they did hold other cotton of theirs until May, 1868, which was sold at from thirty to thirty-three cents per pound, and of the average price of plaintiff's cotton sold from the middle of December, 1866, to May, 1867 (which covered the time from soon after the delivery of the cotton in controversy to the time when the other cotton of plaintiffs was sold) was competent, and should have been admitted. It was held to be error to restrict plaintiffs to proof of the value of cotton at the time the wharfinger made the mistake and shipped the cotton contrary to orders.

ERROR to the circuit court of Washington county. TRIMBLE, J.

*S. W. Ferguson* and *T. J. & F. A. R. Wharton,* for plaintiffs in error.

*Frank Johnston,* for defendants in error.

SIMRALL, J. :

The questions arise on the refusal of the court to admit to the jury testimony offered by the plaintiffs.  Thompson & Chew, as disclosed by the testimony, had delivered to Gwyn & Wallis, who were wharfingers, receiving and forwarding merchants, at Eggs Point, on the Mississippi river, ten bales of cotton, to be by them shipped to New Orleans, for the plaintiffs, as they would be thereafter directed.   A few days after the receipt of the cotton, which was early in December, Gwyn & Wallis, by mistake, forwarded the cotton to New Orleans, to the house of Clapp, Brother & Co., for account of other parties, by whom the same was sold at fifteen and a half cents per pound, and the proceeds paid over to the persons for whose account it was consigned to them, to wit, Lott, Thomas & Wood.  The proceeds, amounting to $455 50, was by them turned over to the plaintiffs, but not accepted in full discharge of their claim against the defendants.   It does not appear from the record what, if any, instructions were given by the court, or that there was a motion for a new trial.

The plaintiffs proposed to prove that they had instructed their merchants in New Orleans to hold their cotton for higher prices, that they did hold other cotton, until May, 1868, which sold from thirty to thirty-three cents per pound. They also offered to prove the average price of their cotton from middle of December to May, 1867 ; but were restricted by the court to the proof of the value of cotton from the middle to the last of December.  (The mistake of the shipment was not discovered until in March, 1867.)  The object of this testimony was to supply data, by which the damages might be fixed.

A person who transacts business for another, in any of the capacities of agency, engages to bestow care, fidelity and attention, upon the matters confided to him, according to its nature.  If he holds out to the public that he will render service, for hire and reward, he impliedly stipulates to give reasonable diligence and prudence in

discharging the service committed to him.   If he is a factor, he undertakes to sell whatever may be consigned to him, according to the usages of the trade, and for the market price ; and that he will pursue the instructions of the owner, as to the time, or other particulars of sale, unless he has incurred advances or obligations, which takes from the consignor control of the property.   Brown v. McGraw, 14 Pet. 494.   So, too, if he is instructed by his correspondent to insure, and neglects to do so, he becomes liable as insurer. De Tastett v. Cronsillat, 2 W. C. C. 132 ; Morris v. Summers, ib. 203.

If an agent is ordered to ship goods in his possession, and fails to do so, he is responsible for the injury that ensues. Jolly v. Blanchard, 1 W. C. C. 252.   The rule applicable to human transactions generally is, that compensation shall be apportioned to the injury, and this rule is applicable to principal and agent.   Bunsell v. Palmer, 2 Will. 325 ; Executors of Smedes v. Elmondorf, 3 Johns. (N. Y.) 185.   In Hamilton, Donaldson & Co. v. Cunningham, 2 Brock. 366, Chief Justice Marshall states the principle to be, "that a person acting on commission, who by his misconduct has brought loss upon his principal, is responsible to the precise extent of the loss produced by that misconduct."   In view of the principle to be gathered from these cases, it is evident that the plaintiffs are entitled to recover, to the extent of the loss sustained by the misconduct of the defendants.   If the value of the cotton, at the time it was shipped to Clapp, Brother & Co., and sold by them, does not cover the loss, that was an improper criterion.   We infer, from the decision of the court rejecting the testimony, and from the arguments of counsel, that the defendants were held responsible, as for a conversion on the day of the shipment, or time of sale, and as the misconduct was the result of negligence, unmixed with evil intent, or fraud, the damages ought to be limited to the value of the cotton.

If a factor sells in violation of instructions to hold, he is liable for a rise in the market.   So, if the warehouseman

and forwarding merchant, under orders not to forward goods until further instructions, by negligence sends forward the goods which are immediately sold, he does not relieve himself by causing the proceeds to be paid over to the owner, if, when the goods are called for, the market has advanced. The terms of accepting the cotton implied the assent to the authority reserved by the plaintiff, that he should appoint the time for shipment. But the negligence of the defendant, in forwarding the goods to Messrs. Clapp, Brother & Co., for account of Lott, Thomas & Wood, put it out of the power of the plaintiffs to control the cotton as intended, and made it impossible for the defendants to obey any instructions as to shipment which they might give. We think the testimony offered ought to have gone to the jury.

Judgment reversed, and a *venire facias* awarded.